al/lml

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **GORDON MARTIS** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Case No. 05-3207-JAR** |
| | ) | |
| **DAVID R. McKUNE, Warden,** | ) | |
| **Lansing Correctional Facility,** *et al.*, | ) | |
| | ) | |
| **Respondents.** | ) | |
| | ) | |

## MEMORANDUM ORDER AND OPINION DENYING
## MOTION UNDER 28 U.S.C. § 2254

This matter comes before the Court on Gordon Martis' Petition for Writ of Habeas Corpus (Doc. 1) seeking federal habeas relief from a state conviction, pursuant to 28 U.S.C. § 2254.  Having carefully considered the parties' submissions, the Court is prepared to rule.  For the reasons stated below, the Court denies Martis' petition for federal habeas relief.

## I.    Background

The facts of this case stem from a shooting that occurred on May 18, 1999.  Four occupants of a car were shot; two were killed and two others wounded.[1]  Andrea Williams and Stacy Wilson were shot, but each recovered.  Alfonzo Moore died from a fatal shot to the heart. Jerry Seals was shot nine times and died as a result of his wounds.  Several witnesses, including Andrea Williams, Loya Qur-an Fuel, Mercedes Sappington, and Darwin Bagley, identified Martis as the shooter.   Martis was originally charged with first-degree premeditated murder of both Moore and Seals.  The prosecution then amended the information to charge Martis with one

---

[1] There was a fifth occupant of the car, Fredrick Howard, who not injured during the shooting.

count of capital murder under the provisions of K.S.A. § 21-3439(a)(6).

Following trial, Martis was convicted of one count of first-degree premeditated murder for the death of Moore and one count of second-degree intentional murder for the death of Seals, each as lesser included offenses of capital murder.  Martis was also convicted of attempted first-degree murder of Wilson and attempted second-degree murder of Williams.  In November 2000, Martis was sentenced to a hard 40 sentence on the premeditated murder conviction.[2]

Martis appealed his sentence to the Kansas Supreme Court, alleging seven points of error: (1) the trial court erred in enjoining Martis from cross-examining Sappington and Bagley about their pending prosecutions in Wyandotte County; (2) the trial court erred in excluding a card and envelope allegedly written to defendant by one of the victims, Ms. Wilson; (3) the trial court erred in allowing a State expert witness to testify as to his opinion that the eye-witnesses were telling the truth; (4) the trial court erred in failing to arrest judgment after the single charge of capital murder was split into two counts of first-degree murder; (5) the trial court erred in excusing 15 potential petit jurors because of employment conflicts without requiring their appearances; (6) Kansas' hard 40 sentencing scheme is unconstitutional because it does not require a jury determination beyond a reasonable doubt of the existence of all the facts required for its imposition; and (7) Kansas' first-degree murder statute is unconstitutionally vague because it is indistinguishable from Kansas' second-degree murder statute.

The Kansas Supreme Court affirmed Martis' convictions and sentence.[3]  Martis then filed

---

[2]The remaining sentences for defendant's other convictions, life imprisonment without the possibility of parole for 10 years on the second-degree murder charge, 268 months' imprisonment for attempted first-degree murder, and 194 months' imprisonment for attempted second-degree murder, were to run concurrently with the hard 40 sentence.

[3] *State v. Martis*, 83 P.3d 1216 (2004).

this Petition for Writ of Habeas Corpus.

## II.    Standard of Review

Because Martis "filed his habeas petition after April 24, 1996, the provisions of the

Antiterrorism and Effective Death Penalty Act ("AEDPA") govern this appeal."[4]  The AEDPA

"circumscribes a federal habeas court's review of a state court decision."[5]  Because the Kansas

Supreme Court reviewed the merits of Martis' claims, "habeas relief is not warranted unless the

state adjudication '(1) . . . was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States; or (2) . . . was

based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding.'"[6]

In *Williams v. Taylor*,[7] the Supreme Court discussed the § 2254(d) clauses.  "Under the

'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a

conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state

court decides a case differently than [the Supreme Court] on a set of materially indistinguishable

facts."[8]  "Under the 'unreasonable application' clause, the Court in *Williams* stressed that the

relevant inquiry is not whether the state court's application of federal law was incorrect, but

whether it was 'objectively unreasonable.'"[9]

---

[4]*Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003) (citations omitted).

[5]*Anderson v. Mullin*, 327 F.3d 1148, 1152 (10th Cir. 2003) (quotations omitted).

[6]*Martinez*, 330 F.3d at 1262 (quoting § 2254(d)).

[7]529 U.S. 362 (2000).

[8]*Id*. at 412-13.

[9]*Anderson*, 327 F.3d at 1153 (citing *Williams*, 529 U.S. at 409).

The court presumes "that factual determinations made by the state court are correct, and the petitioner bears the burden of rebutting this presumption with clear and convincing evidence."[10]  "This presumption does not extend to legal determinations or to mixed questions of law and fact."[11]  "That is, the 'deferential standard of review does not apply if the state court employed the wrong legal standard in deciding the merits of the federal issue.'"[12] "Ultimately, our review of the state court's proceedings is quite limited, as section 2254(d) sets forth a highly deferential standard of evaluating state-court rulings."[13]

## III.    Analysis

Martis raises five[14] constitutional violations in his petition for habeas relief.  The Court will review each alleged violation separately.

### A.    Sixth Amendment Violation

Mercedes Sappington was called as an eyewitness for the State to testify that Martis was the shooter.  She had given her statement to the police at the time of the shootings.  At that time, no charges were pending against her in Wyandotte County.  Approximately two years later, just prior to Martis' trial, Sappington was charged with criminal damage to property.  Martis argued to the trial court that he should be permitted to cross-examine Sappington on the pending charge,

---

[10]*Martinez*, 330 F.3d at 1262 (citing § 2254(e)(1); *Fields v. Gibson*, 277 F.3d 1203, 1221 (10th Cir. 2002)).

[11]*Id.* (citing *Herrera v. Lemaster*, 22 F.3d 1176, 1178-79 (10th Cir. 2000)).

[12]*Id.* (quoting *Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003)).

[13]*Anderson*, 327 F.3d at 1152.

[14] The Court notes that although Martis raised a due process violation allegedly stemming from his conviction and sentence for an additional crime that was not charged in his petition, he fails to address the issue in his memorandum in support of said petition.  Out of an abundance of caution, the Court chooses to address this issue, even if it was petitioner's intention to drop the matter.

although he acknowledged that she did not have any kind of deal with the district attorney's office relative to her testimony in Martis' trial.  The trial court denied Martis' motion, reasoning that it would leave an unfair impression with the jury that Sappington was testifying falsely because she had made a deal with the State, with no evidence to support such an inference, and with the stipulation of Martis that no deal had even been discussed with Ms. Sappington.

Darwin Bagley was also an eyewitness for the State.  Subsequent to his testimony, defense counsel advised the trial court that he had learned that Bagley was arrested immediately after testifying at trial.  Martis argued that he should have been permitted to cross-examine Bagley on the current charges.  The prosecutor argued that like Ms. Sappington, Bagley's pending charges were irrelevant because his testimony was consistent with the statement he gave on the day of the shootings.  In fact, Bagley had been arrested on April 19, 2000, held in custody for 20 hours, then released pending charges, which were filed April 27, 2000, alleging that he sold cocaine and was in possession of cocaine with the intent to sell; a warrant was issued that day.  Bagley was arrested May 1, 2000, immediately after testifying at Martis' trial.  The trial court permitted defense counsel to further inquire about any communications between the prosecutor's office and Bagley regarding his testimony in this case, ultimately concluding that the prosecutor had not discussed these charges with Bagley in preparation for trial and denying Martis' request to cross-examine Bagley on the pending charges.

Martis alleges that this denial of the opportunity to cross-examine these witnesses on their pending charges deprived him of his constitutional right to confrontation.  Martis asserts that the Kansas courts primarily relied on state evidence law, "merely glossing over" his constitutional argument.

5

The Sixth Amendment right to confrontation includes the right to cross-examination.[15]

"[T]he exposure of a witness' motivation in testifying is a proper and important function of the

constitutionally protected right of cross-examination."[16]  In determining what evidence to admit,

"trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose

reasonable limits on such cross-examination based on concerns about, among other things,

harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is

repetitive or only marginally relevant."[17]  The Confrontation Clause does not guarantee "cross

examination that is effective in whatever way, and to whatever extent, the defendant might

wish."[18]

     The Kansas Supreme Court found that the trial court acted appropriately in limiting

cross-examination regarding these witnesses' pending charges.  The court distinguished the

instant circumstances from those in *Davis v. Alaska*,[19] the primary case supporting Martis'

position:

> [I]n *Davis*, the witness was on probation at the time he testified
> and also was a suspect in the crime being prosecuted.  It was
> within this context that the Court declared: "The partiality of a
> witness is subject to exploration at trial, and is always relevant as
> discrediting the witness and affecting the weight of his testimony.
> The claim of bias the defense sought to develop was admissible to
> show the witness' vulnerable status as a probationer as well as the
> witness' possible concern that he might be a suspect in the
> investigation. Such facts do not exist in this case, as the defendant

---

[15]*Davis v. Alaska*, 415 U.S. 309, 315 (1974).

[16]*Id.* at 316-17; *see also Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986).

[17]*Van Arsdall*, 475 U.S. at 679.

[18]*Id.*

[19]415 U.S. 308 (1974).

> offers only the pending charge brought some 2 years after
> [Sappington] gave her statement to the police as the basis for
> admissibility.[20]

Regarding Bagley, the court stated:

> As with Sappington, the charges filed were long after he gave his
> initial statement to the police.   The defendant was afforded
> complete discovery concerning the pending charges, and it was
> revealed that the prosecutor had not discussed these charges with
> Bagley in preparation for trial.   Thus, as with Sappington, the only
> basis for impeachment was the mere existence of the pending
> charges.[21]

After reviewing the trial record and the decision of the Kansas Supreme Court, this Court

agrees that Martis was not denied due process by the trial court's ruling on cross-examination.

The court's factual distinction between *Davis* and Martis' case was not unreasonable nor

contrary to United States Supreme Court precedent.  Moreover, the instant case is also

distinguishable from *United States v. Van Arsdall*,[22] the other Supreme Court case cited by

Martis in support of his position.  In *Van Arsdall*, the witness's criminal charges were dismissed

by the State in exchange for his agreement to speak with the prosecutor about the murder charge

against Van Arsdall.[23]  Here, neither Sappington nor Bagley had charges dismissed or modified

in return for their testimony.  Indeed, it was clear that neither witness had any kind of deal with

the prosecution.  Another key distinction is that both witnesses in this case gave initial

statements that were consistent with their later trial testimony, almost two years prior to the trial

---

[20]*State v. Martis*, 83 P.3d 1216, 1228-29 (Kan. 2004) (citations omitted).

[21]*Id*. at 1229.

[22]475 U.S. 673 (1986).

[23]*Id*. at 676.

and well before the events leading to the charges against them occurred.   Thus, unlike the charges against the witnesses in *Davis* and *Van Arsdall*, the pending charges against Sappington and Bagley were too attenuated to indicate bias.

Confrontation Clause errors are subject to harmless error analysis.[24]  Martis argues that the standard for determining harmless error is beyond a reasonable doubt, citing *Van Arsdall*.[25] On habeas review, however, the standard for determining whether a constitutional error was harmless is whether the error "had substantial and injurious effect or influence in determining the jury's verdict."[26]  Two other eyewitnesses identified Martis as the shooter.  Moreover, as noted by the Kansas Supreme Court, Martis' counsel was able to conduct a thorough cross-examination that was limited only with respect to the witness's pending charges.  Defense counsel was allowed to "exploit all inconsistencies in [Sappington's] original statement compared to her trial testimony and was allowed to ask about several convictions she had for crimes of dishonesty."[27] Indeed, Sappington appeared on the stand wearing an orange jump suit, traditional jail attire.[28]  This Court finds it unlikely that cross-examination of these witnesses about their pending charges would have succeeded in undermining their credibility with the jury, particularly in light of the consistency of their testimony with their initial statements given to the police almost two years prior to trial.  Because the Court cannot find that the trial court's

---

[24]*Id*. at 684.

[25]475 U.S. at 684.

[26]*Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)); *Welch v. Simmons*, 451 F.3d 675, 693 (10th Cir. 2006).

[27]*State v. Martis*, 83 P.3d 1216, 1226 (Kan. 2004).

[28]*Id*.

limitation on the defense's cross-examination had a substantial and injurious effect on the jury's verdict, any error was harmless.

**B.      Exclusion of Evidence**

One of the victims, Stacy Wilson, dated Martis prior to the shootings.  When Wilson began dating Moore, Martis threatened to kill her and Moore.  Wilson was the victim of an unrelated homicide prior to trial.  After the shootings, Wilson wrote two letters to Martis while he was in jail, professing her love for Martis.  The defense sought to introduce both letters during the trial as evidence that the victim would not have professed her love for Martis if he had attempted to kill her on the night of the shootings.  Prior to trial, Martis successfully sought to prevent the State from introducing any evidence surrounding Wilson's death in order to keep the jury from inferring that he had played a role in her death.  As a result of that ruling, the trial court admitted the second letter into evidence, but excluded the first letter dated May 30, 1999.

Martis argues that his due process rights were violated when the Kansas Supreme Court upheld the trial court's refusal to admit the second Wilson letter into evidence.  This Court finds that Martis has not sufficiently raised a federal law question.  Although Martis' argument is couched in terms of due process, he is really arguing that the trial court's decision, based on state evidentiary rules, was wrong.  Martis' post-conviction appeal raises no constitutional question, instead raising questions of state law error.  "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."[29]

---

[29] *Vanwoudenberg v. Booher*, 150 Fed. App'x 760, 761-62 (10th Cir. 2005) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).

Even so, looking at the Kansas Supreme Court reasons for upholding the trial court's decision, this Court finds that the court did not uphold laws contrary to those of the United States or that its decision unreasonable.  The trial and Kansas Supreme Court agreed that the exclusion of the letter did not prevent Martis from presenting his defense that someone else committed the crime.  Notably, the trial court did admit a second letter that the Kansas Supreme Court deemed to be substantially similar to that of the excluded letter, when both professed Wilson's love for defendant.  Given that one of the letters was admitted, the excluded letter was merely cumulative.

### C.    Constitutionality of Kansas' First-degree Murder Statute

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined."[30]  "[T]he void-for vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement."[31]  "A statute can be void for vagueness not only on its face, but as applied, as a result of an unforeseeable and retroactive judicial expansion of narrow and precise statutory language."[32] Judicial review of a penal statute, however, is generally "restricted to consideration of the statute as applied in a particular case, provided the statute does not threaten to chill the exercise of constitutional rights."[33]

---

[30]*Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

[31]*Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

[32]*United States v. Platte*, 401 F.3d 1176, 1189 (10th Cir. 2005) (quotations omitted).

[33]*Id*. at 1189-90 (quotations omitted).

Because Martis cannot claim that Kansas' first-degree murder statute chills constitutionally protected conduct, the Court examines the statute only as applied here. AEDPA's deferential standard of review controls the Court's examination, as the Kansas Supreme Court decided the vagueness issues on the merits.[34]

Whether an intentional killing statutorily qualifies as first or second-degree murder depends on whether the killing was premeditated.  K.S.A. § 21-3401(a) defines first-degree murder as "the killing of a human being committed . . . [i]ntentionally and with premeditation." K.S.A. § 21-3402(a) defines second-degree murder as "the killing of a human being committed . . . [i]ntentionally."  At trial, the jury was instructed that "premeditation means to have thought over the matter beforehand for any length of time sufficient to form an intent to act" and "intentionally means conduct that is purposeful and willful and not accidental.  Intentional includes the terms 'knowing,' 'willful,' 'purposeful,' and 'on purpose.'"[35] Martis argues that defining "premeditation" as "to have thought over the matter beforehand" renders the first-degree murder statute indistinguishable from the second-degree murder statute.  He argues, in effect, that such a definition makes "premeditation" synonymous with "intentional" because to kill a person intentionally necessitated thinking about it beforehand.  In other words, the argument is that all intentional killings are necessarily premeditated killings, making first-degree murder indistinguishable from second-degree murder.  Martis also contends the Kansas Supreme Court's definition of "premeditation" has been "in flux," and thus the definition could not have

---

[34]*See Goss v. Nelson*, 439 F.3d 621, 635-36 (10th Cir. 2006) ("In the context of applying 28 U.S.C. § 2254(d), our focus is on whether the *result* reached by the state court contravenes or unreasonably applies clearly established law, not on the extent of the reasoning followed by the state court in reaching its decision.").

[35]*State v. Martis*, 83 P.3d 1216, 1237 (Kan. 2004).

been adequately absorbed by a person of common intelligence as it is "constantly modified."

As Martis notes, in *State v. Saleem*,[36] Justice Allegrucci questioned, in a concurring opinion, "How does one *intentionally* kill another human being without thinking about it beforehand?"[37]  Justice Lockett adopted the same view in his concurrence in *State v. Pabst*.[38] While the issue raised by Martis has been subject to debate and discussion, it is clear that a majority of the Kansas Supreme Court remain convinced that "[t]o have thought the matter over beforehand means to form a design or intent to kill before the act."[39]  The Kansas Supreme Court reaffirmed that holding in this case.[40]

Under the AEDPA's standard of review, the Kansas Supreme Court's rejection of Martis' vagueness argument neither contravened nor unreasonably applied federal due process law.  As the Tenth Circuit recently explained, "[a]n ordinary person could discern a difference between a killing that is committed intentionally and a killing that is committed intentionally and with premeditation, if premeditation involves thinking a matter over beforehand and intentionally involves purposeful, willful and non-accidental conduct."[41]  "Thinking something 'over' indicates a quantum of reflection—premeditation—absent from the deliberative process necessary to act intentionally—'to act purposefully, willfully and not by accident.'"[42]

---

[36]977 P.2d 921 (Kan. 1999).

[37]*Id.* at 931.

[38]44 P.3d 1230 (Kan. 2002).

[39]*See State v. Jamison*, 7 P.3d 1204, 1212 (Kan. 2000) (citing *State v. McGaffin*, 13 P. 560 (Kan. 1887)

[40]*Martis*, 83 P.3d at 302 (quoting *Jamison*, 7 P.3d at 1207)).

[41]*Sperry v. McKune*, 445 F.3d 1268, 1272 (10th Cir. 2006).

[42]*Id.*

Nor would an ordinary person be unable to distinguish between first and second-degree murder in light of the evidence presented at Martis' trial.  Martis had previously threatened to kill Wilson and Moore; he had a loaded gun; he watched Wilson and Moore drive by several times; he walked across the street to the victims' car; and he told Wilson, "Bitch, what'd I tell you?" before opening fire on her and the other occupants.[43]  According to some of the witnesses, Martis' gun jammed or he paused, he started to leave, then he looked back into the back seat of the car and fired several more shots.[44]

Moreover, the outcome of Martis' case makes it unlikely that the jury was confused by the difference between premeditated first-degree murder and second-degree intentional murder. Martis was found guilty of first-degree premeditated murder for killing Moore, whom he had previously threatened to kill, but guilty of second-degree murder for killing Seals, whom he had no known motive to kill.[45]  The first-degree murder statute, as applied here through the jury instructions to the evidence offered at trial, was sufficiently clear and understandable. Accordingly, the Court concludes that Kansas' first-degree premeditated murder statute is not unconstitutionally vague, and federal habeas relief is not warranted.

### D.   Constitutionality of Kansas' "Hard 40" Sentence

Kansas law provides that if a defendant is convicted of premeditated first-degree murder, the trial court shall determine whether he be required to serve a mandatory term of imprisonment

---

[43]*Martis*, 83 P.3d at 1221-22.

[44]*Id.*

[45]*Id.*

13

of 40 years without the eligibility of parole.[46]  In order to do so, the trial court must make that determination after considering evidence of aggravating and mitigating circumstances.[47]  If the court finds one or more of the aggravating circumstances to exist and the aggravating circumstances outweigh any potential mitigating circumstances, the defendant shall receive the hard 40 sentence.[48]

Martis' petition does not challenge the sufficiency of the evidence to support the findings, but instead asserts that the findings by the trial court and not by a jury violated his rights under *Apprendi v. New Jersey*[49] and *Ring v. Arizona*.[50]  The rule expressed in those cases requires any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, to be submitted to a jury, and proved beyond a reasonable doubt.

On direct appeal to the Kansas Supreme Court, Martis argued that the Kansas hard 40 scheme is unconstitutional because it imposes an additional punishment on a defendant convicted of premeditated first-degree murder based on facts that were not submitted to a jury and proved beyond a reasonable doubt under *Apprendi*.  Martis urged the court to overrule its decision in *State v. Conley*,[51] which held that the Kansas hard 40 scheme was not

---

[46]K.S.A. §§ 21-4635(a), 21-4638 (1995).  These statutes were amended in 1999 to provide for a 50 year mandatory minimum sentence.  Because Martis' crime took place prior to the effective date of the amendments, he was sentenced under the former 40-year mandatory minimum sentencing scheme.

[47]K.S.A. § 21-4635(b).

[48]K.S.A. § 21-4635(c).

[49]530 U.S. 466 (2000).

[50]536 U.S. 584 (2002).

[51]11 P.3d 1147 (Kan. 2000), *cert. denied* 532 U.S. 932 (2001).

14

unconstitutional because it did not increase the maximum length of Conley's life sentence but limited the lower end of the sentence in a manner consistent with *McMillan v. Pennsylvania*.[52] Martis criticized the *Conley* court's reliance upon *McMillan*.

The Kansas Supreme Court rejected Martis' constitutional challenge to the hard 40 scheme and declined to overrule *Conley*.[53]  The court stated that it has repeatedly upheld *Conley*,[54] and that Martis had failed to cite any authority postdating *Conley*, *Apprendi* or *McMillan* that would convince it to change its course.[55]  This Court notes that since the Kansas Supreme Court rejected Martis' argument, it has upheld *Conley* at least seven times.[56]

This Court agrees with the Kansas Supreme Court's determination that a sentence that provides that a defendant was ineligible for parole for a determinate amount of years does not violate his Sixth Amendment rights since the state trial judge did not increase the maximum sentence.  It is beyond dispute that the trial judge's choice of sentences within the authorized range may be influenced by facts not considered by the jury.  Thus, a factual finding's practical effect cannot by itself control the constitutional analysis.  The Fifth and Sixth Amendments ensure that the defendant "will never get more punishment than he bargained for when he did the

---

[52]477 U.S. 79 (1986) (facts that do not increase a defendant's punishment beyond that authorized by the underlying statute need not be proven to a jury beyond a reasonable doubt).

[53]*State v. Martis*, 83 P.3d 1216, 1236-37 (Kan. 2004).

[54]*See, e.g.,  State v. Washington*, 68 P.3d 134, 159 (Kan. 2003).

[55]*Martis*, 83 P.3d at 1237.

[56]*See e.g., State v. Albright*, 153 P.3d 497, 502 (Kan. 2007); *State v. Engelhardt*, 119 P.3d 1148, 1169 (Kan. 2005); *State v. Washington*, 123 P.3d 1265, 1271 (Kan. 2005), *cert. denied* 127 S. Ct. 552 (2006); *State v. James*, 109 P.3d 1171, 1174 (Kan. 2005); *State v. Buehler-May*, 110 P.3d 425, 436 (Kan. 2005), *cert. denied* 126 S.Ct. 549 (2005); *State v. Robertson*, 109 P.3d 1174, 1187 (Kan. 2005); *State v. Hurt*, 101 P.3d 1249, 1256 (Kan. 2004).

crime," but they do not promise that he will receive "anything less" than that.[57]  The imposition

of the hard 40 sentence here does not increase Martis' life sentence.  Instead, it limits the lower

end of the sentence, which is consistent with Supreme Court precedent.[58]

In his habeas petition, Martis continues to argue that the hard 40 scheme is

unconstitutional, and contends that his position is bolstered by the United States Supreme Court

decision in *Blakely v. Washington*.[59]  The Court disagrees.  Neither the Supreme Court nor the

Tenth Circuit has held that *Blakely* is retroactive to cases on collateral review.[60]  Because Martis'

sentence was final on February 6, 2004, *Blakely* does not apply.

Thus, the Court concludes that the Kansas Supreme Court's decision upholding Martis'

sentence under the hard 40 statutory scheme was neither contrary to, nor involved an

unreasonable application of, the constitutional principles of *Apprendi* and *Ring*.  The Kansas

Supreme Court's decision and the hard 40 sentencing scheme are consistent with the United

States Supreme Court's decisions in *McMillan* and *Harris*.  Accordingly, the Court finds that

Kansas' hard 40 sentencing scheme is constitutional and that Martis' claim provides no basis for

federal habeas relief.

---

[57]*Apprendi*, 530 U.S. at 498; *Harris v. United States*, 536 U.S. 545, 565-66 (2002).

[58]*Harris*, 536 U.S. at 565-66.

[59]542 U.S. 296 (2004).

[60]*See Schriro v. Summerlin*, 542 U.S. 348 (2004) (in a case decided the same day as *Blakely*, the Court implied that *Blakely* would not be applied retroactively); *Leonard v. United States*, 383 F.3d 1146, 1147-48 (10th Cir. 2004); *United States v. Price*, No. 04-7058, 2004 WL 2905381, *4 -5 (10th Cir. Dec. 16, 2004); *cf. United States v. Leonard*, No. 04-6197, 2005 WL 139183, *2 (10th Cir. Jan. 24, 2005) ("New rules of criminal procedure, however, are applied retroactively only to cases pending on direct review or cases that are not yet final. . . . Thus, *Blakely*, as well as the Supreme Court's more recent decision in *United States v. Booker* . . . have no applicability to Leonard's sentence.").  *See also United States v. Bellamy*, 411 F.3d 1182, 1186 (10th Cir. 2005) (joining other circuits that conclude that *Booker* does not apply retroactively to initial habeas petitions); *Bey v. United States*, 399 F.3d 1266, 1269 (10th Cir. 2005) (*Booker* may not be applied retroactively to second or successive habeas petitions).

E.      **Conviction of Lesser Included Offenses[61]**

For the deaths of Moore and Seals, Martis was charged with a single count of capital

murder under the Kansas statute.   K.S.A. 21-3439(a)(6) defines capital murder in Kansas as, the

"intentional and premeditated killing of more than one person as a part of the same act or

transaction or in two or more acts or transactions connected together or constituting parts of a

common scheme or course of conduct."[62]   At trial, the jury was instructed as to the requirements

necessary to be proven to establish the crime of capital murder.   At Martis' request, the jury was

also instructed that as to the capital murder Count, it may consider the lesser included offenses of

first-degree and second-degree murder of Moore, and the same lesser included offenses for the

murder of Seals.   At the conclusion of the trial, Martis was convicted of the lesser included

offense of first-degree murder of Moore and the lesser included offense of second-degree murder

of Seals.

Defendant appealed to the Kansas Supreme Court contending that the fact that he was

charged with only the single count of capital murder and was convicted of *two* lesser included

offenses violated his constitutional right to due process.   The court reasonably disagreed.   The

court reasoned that "the result of jury deliberations in this case with lesser included offense

instructions for the murders of both Moore and Seals under the provisions of K.S.A. 21-

3439(a)(6) demonstrates the fairness to the defendant."[63]   The court further reasoned that, if it

adopted Martis' argument, the trial court would have had the option of either instructing on a

---

[61]As previously noted, Martis did not address this issue in his brief in support of his petition.

[62]K.S.A. § 21-3439(a)(6).

[63]*Martis*, 83 P.3d at 1225.

lesser included offense for only one of the murder charges, or to decline to give a lesser included instruction at all.[64]  Both options would have prejudiced Martis and denied him a fair trial.[65] Noting that this was an issue of first impression, the court concluded that where, as in this case, the defendant requests lesser included instructions and the evidence supports such instructions for both victims, K.S.A. 21-3439(a)(6) requires the trial court to instruct on each lesser included offense for each victim.[66]   The court stated:

> The amended information in this case put the defendant on notice that he was alleged to have killed two people with premeditation and the penalty could be as severe as death.  Neither K.S.A. 2002 Supp. 22-3201(e) nor K.S.A. 2002 Supp. 21-3107 limit lesser included offenses to consisting of only one count.  Under this particular subsection of the capital-murder statute, the lesser included offenses necessarily include two or more separate counts of first-degree murder.[67]

The standard of review under the first subsection of § 2254(d) requires this Court to determine whether the decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.[68]  Because the Supreme Court has yet to rule on a matter indistinguishable from the one presented here, it can not be said that the Kansas Supreme Court's decision is contrary to or an unreasonable application of, United States Supreme Court precedent, nor is it in violation of any established constitutional principles.  In addition, for the same reasons stated above, the Kansas Supreme

---

[64]*Id.*

[65]*Id.*

[66]*Id.*

[67]*Id.*

[68]28 U.S.C. § 2254(d)(1)

Court's decision was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Accordingly, this claim provides no basis for federal habeas relief.

**IT IS THEREFORE ORDERED BY THE COURT** that Martis' petition for relief under 28. U.S.C. § 2254 (Doc. 1) is DENIED.

**IT IS SO ORDERED**.

Dated this 6th day of June 2007.

 S/ Julie A. Robinson
                    Julie A. Robinson
                    United States District Judge